UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | Case No. C 07-03444 JF (PVT) |
| Plaintiff, | ) ) ) | **ORDER GRANTING DEFENDANT LONCHAR'S MOTION FOR ISSUANCE OF LETTERS ROGATORY** |
| v. | ) ) | |
| MARK LESLIE, et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

### INTRODUCTION

Defendant Kenneth Lonchar moves for the issuance of two letters rogatory pursuant to the Hague Convention. Defendants Mark Leslie and Paul Sallaberry do not oppose the motion. However, plaintiff U.S. Securities & Exchange Commission opposes the motion in part. Chiefly, it disputes the relevance of the testimony by one of the individuals named in the letters rogatory and objects to the characterization of the claims alleged against the defendants in the letters rogatory. Pursuant to Civil Local Rule 7-1(b), the motion is submitted without oral argument. The hearing presently scheduled for March 17, 2009 is vacated. Having reviewed the

papers and considered the arguments of counsel, defendant Lonchar's motion is granted.[1]

**BACKGROUND**

Initially, the SEC undertook an extensive and lengthy investigation of the AOL, Inc. ("AOL").  AOL is an Internet service provider.  As part of that investigation however, the SEC came to question certain transactions and accounting practices involving the software company, Veritas Software Corporation.[2]  ("Veritas").

On September 29, 2000, Veritas sold a $50 million software license to AOL and in turn, AOL sold $20 million of advertising to Veritas.  The SEC alleges that the advertising deal was an eleventh hour add-on to a software license agreement wherein AOL had agreed to pay an additional $20 million (above the previously agreed upon amount of $30 million) in exchange for Veritas' agreement to buy $20 million in advertising from AOL.  The SEC alleges that Veritas had no need for such advertising from AOL and merely conducted the purchase "as a favor" to AOL.  Indeed, in March 2003, Veritas restated a portion of the revenue booked from this transaction.  The SEC alleges that the so-called "round trip transaction" was an effort to artificially inflate the publicly reported revenues and earnings of both AOL and Veritas.

The SEC further alleges that Veritas CFO Kenneth Lonchar and others participated in three alleged non-GAAP accounting practices to "smooth" or understate revenue of the company during unspecified periods from 2000 through 2002.  In addition, the SEC alleges that the Veritas officers lied to the company's own independent auditors which caused the company to report false and misleading financial results in its periodic filings with the SEC and in its other public statements from at least 2000 through 2003 and in its January 28, 2004 earnings release of fourth quarter and annual results for 2003.

In July 2007, the SEC filed a complaint alleging fraud, lying to auditors, record-keeping, internal controls and aiding and abetting violations, against certain former executives of Veritas, including its former CEO Mark Leslie, its former CFO Kenneth Lonchar and its former Vice President of Sales, Paul Sallaberry.

---

[1]   The holding of this court is limited to the particular facts and circumstances underlying the present motion.

[2]   On July 2, 2005, Symantec Corporation acquired Veritas Software Corporation.

Pursuant to Rule 28(b) and 28 U.S.C. § 1781 (b)(2), defendant Lonchar moves for issuance of letters rogatory, or letters of request, to obtain relevant testimony from John Francis Brigden and Geoffrey William Squire, both of whom reside in the United Kingdom.

Mr. Brigden served as Veritas' General Counsel from 2001.  He also served as Chief Compliance Officer, Senior Vice President and Secretary during that time period for the company.  Presently, Mr. Brigden is a Senior Vice President at Symantec.  During his tenure as Veritas' General Counsel, he oversaw Veritas' internal investigation of the AOL transactions, the certification of Veritas' financial statements in August 2002 and the restatement of Veritas' financial statements in 2003.  Mr. Brigden testified before the SEC during its internal pre-litigation investigation on January 13-14, 2005.

Mr. Squire was a member of Veritas' Board of Directors from approximately April 1997 until 2005, including a service as Vice Chairman of the Board.  He was a member of the board during (1) Veritas' internal investigation of the AOL software licensing and advertising transactions and the restatement of Veritas' financial statements in 2003; and (2) the investigation of certain accounting practices and restatement of Veritas' financial statements in 2004.  Mr. Squire also served as an Executive Vice President of Veritas and was involved in both strategic marketing and forecasting/budgeting for the company until May 2003.  He testified before the SEC during its internal pre-litigation investigation on April 8, 2005.

Pursuant to its discovery obligations, the SEC has served defendants with the prior testimony of Mr. Brigden and Mr. Squire which was obtained during the internal pre-litigation investigation.  All of the defendants have identified Mr. Brigden and Mr. Squire in their initial disclosures as likely to have discoverable information.  The discovery cut-off date is June 12, 2009 and a trial is currently scheduled for December 4, 2009.

## LEGAL STANDARD

"[A] letter rogatory is the request by a domestic court to a foreign court to take evidence from a certain witness."  *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 248, 124 S.Ct. 2466, 2473 (2004).  A court has the inherent authority to issue a letter rogatory.  28 U.S.C. § 1781.  *See also, Netherby v. Jones Apprel Group, Inc.,* 2005 WL 1214345 (S.D.N.Y.).  "[A]

1   letter rogatory may be transmitted directly by a United States court to the 'foreign tribunal . . . to

2   whom it is addressed.'" *DBMS Consultants Limited v. Computer Associates Int'l, Inc.,* 131

3   F.R.D. 367, 369 (D. Mass. 1990).

4       A deposition may be taken in a foreign country (1) under an applicable treaty or

5   convention; (2) under a letter of request (whether or not captioned a letter rogatory); (3) on

6   notice, before a person authorized to administer oaths in the place where the examination is held,

7   either by the law or by the law of the United States, or (4) before a person commissioned by the

8   court, and a person so commissioned shall have the power by virtue of the commission to

9   administer any necessary oath and take testimony.  Fed. R. Civ. P. 28(b).  *See Evanston Ins. Co.*

10  *v. OEA, Inc.,* 2006 WL 1652315 *1 (E.D. Cal.).

11      The opposing party must show good reason for a court to deny an application for a letter

12  rogatory.  *DBMS Consultants Limited v. Computer Associates Int'l, Inc.,* 131 F.R.D. at 367.  *See*

13  *also,  Evanston Ins. Co. v. OEA, Inc.,* 2006 WL 1652315 *2 ("[S]ome courts have gone so far as

14  to hold that the party opposing issuance of a letter rogatory must establish good cause for the

15  denial.").  "Whether such a showing has been made and whether and in what form a letter

16  rogatory should issue are factual determinations turning upon the circumstances of the particular

17  case."  *Id.* (internal citations omitted).

18      Rule 26(b) states that "[p]arties may obtain discovery regarding any nonprivileged matter

19  that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b).  *See also, DBMS*

20  *Consultants Limited v. Computer Associates Int'l, Inc.,* 131 F.R.D. at 369; and *Netherby v. Jones*

21  *Apprel Group, Inc.,* 2005 WL 1214345 *1.  "Relevant information need not be admissible at the

22  trial if the discovery appears reasonably calculated to lead to the discovery of admissible

23  evidence."  *Id.*  "Nonetheless, Rule 28(b) must be read together with Rule 26(c), which permits

24  a court to make any order 'which justice requires to protect a party or person from annoyance,

25  embarrassment, oppression, or undue burden or expense."  *Evanston Ins. Co. v. OEA, Inc.,* 2006

26  WL 1652315 *2.  *See also, Horvath v. Deutsche Lufthansa, AG,* 2004 WL 241671 *2 (S.D.N.Y.)

27  ("Rule does not divest a Court of all discretion in the matter.").  "Judicial supervision of

28  discovery should always seek to minimize its costs and inconvenience and to prevent improper

uses of discovery requests." *Société Nationale Industrielle Aérospatiale, et al. v. U.S. District Court,* 482 U.S. 522, 546, 107 S.Ct. 2542, 2557 (1987).

The Hague Convention, of which both the United Kingdom and the United States are signatories, provides the mechanism for the taking of evidence abroad in civil or commercial matters. Application for a letter rogatory "to take testimony pursuant to the Hague Convention is an appropriate mechanism for obtaining discovery of a non-party witness in a foreign country." *Elliott Assoc., L.P. v. Peru*, Nos. 96 CIV. 7917, 1997 WL 436493, at *2 (S.D. NY. August 1, 1997).

Pursuant to the Hague Convention, Letters of Request may be used to obtain evidence or perform some other judicial act, but shall not be used to obtain evidence which is not intended for use in judicial proceedings, commenced or contemplated. Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, (Hague Convention), Article 1. A letter of request shall specify:

> (a) the authority requesting its execution and the authority requested to execute it, if known to the requesting authority; (b) the names and addresses of the parties to the proceedings and their representatives, if any; (c) the nature of the proceedings for which the evidence is required, giving all necessary information in regard thereto; (d) the evidence to be obtained or other judicial act to be performed.
>
> Where appropriate, the Letter shall specify, *inter alia*, (e) the names and addresses of the persons to be examined; (f) the questions to be put to the persons to be examined or a statement of the subject-matter about which they are to be examined; (g) the documents or other property, real or personal, to be inspected; (h) any requirement that the evidence is to be given on oath or affirmation, and any special form to be used; (i) any special method or procedure to be followed under Article 9.

Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, (Hague Convention), Article 3.

## DISCUSSION

None of the parties dispute the relevance of discoverable information which may be obtained from Mr. Bridgen. He was Veritas' General Counsel from June 2001 through the entire relevant time period set forth in the Amended Complaint. In that capacity, he oversaw Veritas' internal investigation of the AOL transactions, the certification of Veritas' financial statements in August 2002, and the restatement of Veritas' financial statements in 2003. Mr. Brigden also

investigated defendant Lonchar's alleged falsification of his educational background.
Additionally, his testimony reflects that he is "very familiar" with the accounting irregularities
that were amended in Veritas' second restatement in 2004.  No reason has been shown to deny
the motion for a letter rogatory.  Accordingly, defendant Lonchar's motion for issuance of a
letter rogatory to obtain testimony from Mr. Bridgen is granted.

However, the SEC disputes the relevance of discoverable information which may be
obtained from Mr. Squire.  As an initial matter, the SEC points out that in its initial disclosures,
it did not identify Mr. Squire as an individual who is likely to have discoverable evidence.
Moreover, Mr. Squire's prior testimony taken during the SEC's pre-litigation investigation
demonstrates that "he [had] little or no personal knowledge of the relevant matters being litigated
in this action."  In support of its view, the SEC has provided excerpts of that testimony.  The
SEC argues that taking Mr. Squire's deposition abroad would be costly, time-consuming and
wasteful.  Having reviewed the prior testimony of Mr. Squire and considered the arguments of
counsel, the court finds that he has information which may be relevant to the claims and defenses
in the action.  For example, Mr. Squire testified that in his capacity as the "budgeting guy," the
advertising transaction between Veritas and AOL impacted his planning for the 2001 budget.  He
shared his views regarding the scope of the advertising during that time.  Specifically, Mr. Squire
testified that "[a]nd so it was within the budget of corporate advertising.  In my view, it wasn't a
huge sum of money, I think we were budgeting amount $130 million at the time, so 10 percent of
that we spent on corporate stuff like international yachts or whatever.  It didn't seem out of
bounds from a pure financial point of view."  Moreover, Mr. Squire testified regarding his
participation in board meetings and his recollection of the presentations involving the AOL-
Veritas transaction and the subsequent restatements thereto.  Accordingly, defendant Lonchar's
motion for issuance of a letter rogatory to obtain testimony from Mr. Squire is granted.

## CONCLUSION

For the foregoing reasons, defendant Lonchar's motion for issuance of letters rogatory is
granted.  The parties shall meet and confer regarding the characterization of the SEC's claims
against defendant Lonchar in the letters rogatory.  Defendant Lonchar shall submit the letters

1   rogatory to the court no later than ten days from the date of this order.  The duration of the

2   examinations of Mr. Bridgen and Mr. Squire shall be governed by the Order Establishing

3   Discovery Protocol dated May 6, 2008.  ("May 6, 2008 Order").

4         IT IS SO ORDERED.

5   Dated:   March 16, 2009

6   _____

7   PATRICIA V. TRUMBULL
    United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28