UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br>  v.<br>MARK LESLIE, et al.,<br><br>  Defendants. | Case No. C 07-03444 JF (PVT)<br><br>**ORDER DENYING DEFENDANT LONCHAR'S MOTION TO STRIKE WITHOUT PREJUDICE TO A RENEWED MOTION *IN LIMINE***<br><br>**[Docket No. 145]** |

**INTRODUCTION**

On September 22, 2009, defendant Kenneth E. Lonchar moved to strike or exclude portions of the expert witness report of Jeffry L. Davis. In addition, defendant Lonchar moved to shorten time on his motion to strike. On September 23, 2009, plaintiff U.S. Securities & Exchange Commission responded, in part, to both motions.[1] Pursuant to Civil Local Rule 7-1(b), the motion to strike was taken under submission without oral argument. The hearing noticed for October 27, 2009 is vacated. Having reviewed the papers and considered the arguments of counsel, defendant Lonchar's motion to dismiss is denied without prejudice to a renewed motion

---

[1] In its response, the SEC detailed the parties' extensive meet and confer efforts and requested at least five business days to oppose the motion.

ORDER, *page 1*

*in limine.*[2]  And defendant Lonchar's motion to shorten time is denied as moot.

## BACKGROUND[3]

On September 29, 2000, Veritas sold to AOL a $50 million software license, and in turn, AOL sold to Veritas $20 million of advertising.  The SEC alleges that the advertising deal was an eleventh hour add-on to a software license agreement wherein AOL had agreed to pay an additional $20 million (above the previously agreed upon amount of $30 million) in exchange for Veritas' agreement to buy from AOL $20 million in advertising.  The SEC alleges that Veritas had no need for such advertising from AOL and merely conducted the purchase "as a favor" to AOL.  Indeed, in March 2003, Veritas restated a portion of the revenue booked from this transaction.  The SEC alleges that the so-called "round trip transaction" was an effort to artificially inflate the publicly reported revenues and earnings of both AOL and Veritas.

The SEC further alleges that Veritas CFO Kenneth Lonchar and others participated in three alleged non-GAAP accounting practices to "smooth" or understate revenue of the company during unspecified periods from 2000 through 2002.  In addition, the SEC alleges that the Veritas officers lied to the company's own independent auditors which caused the company to report false and misleading financial results in its periodic filings with the SEC and in its other public statements from at least 2000 through 2003 and in its January 28, 2004 earnings release of fourth quarter and annual results for 2003.

Pursuant to the scheduling order dated June 25, 2009, defendant Paul A. Sallaberry timely served an expert witness report drafted by Thomas Berquist.  ("June 25, 2009 Scheduling Order").  Mr. Berquist has extensive experience in investment research analysis for publicly-traded software companies.  He offered opinions regarding whether the restatement of Veritas' financial statements in March 2003 would have impacted a reasonable investor to buy or sell Veritas stock. Based on his analyses of earnings per share as originally reported in 2000 and 2001 and following subsequent restatements, Mr. Berquist concluded that "[a] reasonable

---

[2]  The holding of this court is limited to the facts and particular circumstances underlying the present motion.

[3]  The background facts have been recounted in detail in prior orders from this court.

investor would not have considered the Restatements of Veritas' financial statements in March 2003 to be important to a decision to buy or sell the stock of Veritas."

In rebuttal, the SEC timely served an expert witness report drafted by Jeffry L. Davis who opined that, contrary to Mr. Berquist's methodology and conclusions, that "a reasonable investor would have considered the accounting misrepresentations to be important to a decision to buy or sell the stock of Veritas Software Corporation (Veritas)." Like Mr. Berquist, Mr. Davis has extensive experience in financial analysis and market responses.

In his motion to strike, defendant Lonchar argues that certain of Mr. Davis' conclusions exceed the scope of opinions rendered by Mr. Berquist in his expert witness report, and therefore, should be stricken as improper rebuttal. Defendant Lonchar argues that improper rebuttal should be stricken because of the undue prejudice he faces in having to undertake substantial deposition preparation. Mr. Davis' deposition is scheduled to be held on October 6, 2009. The expert discovery cut-off is October 9, 2009.

**DISCUSSION**

Rule 702 provides that a witness qualified as an experts may testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. A witness is qualified as an expert based on knowledge, skill, experience, training or education. *Id.* Rule 702 states that an expert witness may testify if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. *Id. See also, Humphreys v. Regents of the University of California, et al.,* 2006 WL 1867713 (N.D. Cal.)("'As the Supreme Court emphasized, however, '[t]he inquiry envisioned by Rule 702 is . . . a flexible one,' . . . and must be 'tied to the facts of a particular case.'")(internal citations omitted); and *Ellis v. Pennsylvania Higher Education Assistance Agency,* 2008 WL 5458997 (C.D. Cal.)("The [court's] focus should be 'solely on principles and methodology, not on the conclusions they generate.'")(internal citations omitted).

Rule 26(a)(2)(C)(ii) governs the disclosure of an expert who may "rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)." Fed. R. Civ. P.

26(a)(2)(C)(ii).  *See, International Business Machines Corporation v. Fasco Industries, Inc.,* 1995 WL 115421 (N.D. Cal.)(the testimony of the rebuttal witness experts will be strictly limited to poking holes in the theories of IBM's experts).

"A district court is vested with broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial. . . . Within this discretion lies the power to exclude or admit expert testimony." *Campbell Industries v. M/V Gemini,* 619 F.2d 24, 27 (9th Cir. 1980).

Defendant Lonchar contends that certain of Mr. Davis' rebuttal opinions contained in his expert witness report exceed the scope of Mr. Berquist's expert witness report.  Specifically, defendant Lonchar objects to paragraphs 6, 14, 19-20 and 22-23 of Mr. Davis' report.

Defendant Lonchar argues that the amended complaint can be separated into two general categories of claims: (1) the first category relates to the so-called "round-trip" transaction wherein defendants Leslie, Lonchar and Sallaberry allegedly caused Veritas to enter into and improperly account for a transaction with AOL.  The transaction occurred on September 29, 2009.  In March 2003, Veritas restated a portion of its revenue from the software transaction.  Defendant Lonchar terms the facts underlying this transaction as the "First Restatement;" (2) the second category relates to "smoothing practices" allegedly undertaken by defendant Lonchar and others on or about and between 2000 and 2002.  The SEC alleges that defendant Lonchar engaged in these practices to deflate Veritas' revenue through accounting practices that violated Generally Accepted Accounting Principles ("GAAP").  In March 2004, Veritas restated its financial statements based on these allegedly improper accounting practices.  Defendant Lonchar terms the facts underlying the "smoothing practices" as the "Second Restatement."

Defendant Lonchar argues that his co-defendant, Sallaberry, engaged Mr. Berquist to opine on the discrete issue of whether a reasonable investor would have considered Veritas' March 2003 restatement to be an important factor in deciding to buy or sell the Veritas stock.  In other words, Mr. Berquist's opinions relate to the facts underlying the First Restatement only.  In his expert witness report, Mr. Davis addresses the methodology and opinions of Mr. Berquist's report as they relate to the facts underlying the First Restatement *and* the Second Restatement.  Indeed, Mr. Davis notes in his report that Mr. Berquist's report "does not address at all the other

misrepresentations alleged in the SEC's complaint (Smoothing Misrepresentations) [which] were corrected by Veritas in a separate restatement announced in March 2004." Because Mr. Davis' rebuttal relates to both the First Restatement and the Second Restatement, the latter of which was not opined on at all by Mr. Berquist, defendant Lonchar argues that those opinions constitute improper rebuttal and should be stricken. In addition, the alleged claims relating to the Second Restatement involve defendant Lonchar, and not co-defendant Sallaberry.

In his expert witness report, Mr. Berquist concludes, *inter alia,* that a reasonable investor would not have considered the March 2003 restatement to be important to a decision to buy or sell Veritas stock. He bases his opinion, in part, on the differences in the earnings per share (EPS) between the time when the financial statements were originally reported and the time after the March 2003 restatement occurred. Based on his industry experience, Mr. Berquist explains why investors "care so much" about EPS estimate changes.

On the other hand, Mr. Davis opines that the EPS analysis is incomplete at best, because first, it fails to consider the importance of market interpretations of intentional misrepresentations and second, Mr. Berquist's analysis fails to provide a "link between the measurement of the accounting differences and the effect of the differences on investors." Mr. Davis' methodology claims to provide a "direct measurement of the impact of the disclosure on investor perceptions and an assessment of the significance of that impact." He extends this analysis to cover the facts underlying the Second Restatement.

Mr. Davis' expert witness report rebuts the principles and methodology employed by Mr. Berquist to opine on the impact of alleged intentional misrepresentations on investor behaviour. Alternatively, Mr. Davis suggests his own methodology and reaches different conclusions. He uses this same methodology to analyze the facts underlying the alleged "smoothing practices." Though the facts underlying the two Veritas restatements may arguably have been separate incidents, from a broader view, the alleged intentional misrepresentations relate to the same subject matter. In addition, the underlying facts for both restatements overlap in time. At this juncture, it is appropriate for Mr. Davis' deposition to proceed on all of the opinions he has proffered in his expert witness report. However, denial of defendant's Lonchar's motion to strike

1  is without prejudice to a renewed motion *in limine*.

2  **CONCLUSION**

3  For the foregoing reasons, defendant Lonchar's motion to strike certain portions of Mr.
4  Davis' report is denied without prejudice to a renewed motion *in limine*.

5  IT IS SO ORDERED.

6  Dated: September 29, 2009

7  _____
   PATRICIA V. TRUMBULL
8  United States Magistrate Judge